IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jackie Lee Boyd, # 298278, ) | |
| ) | Civil Action No. 6:14-4342-TMC-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Leroy Cartledge, Warden, ) | |
| ) | |
| Respondent. ) | |

Petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(c)(D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## **BACKGROUND**

Petitioner is currently incarcerated at the McCormick Correctional Institution in the South Carolina Department of Corrections ("SCDC"). Petitioner was indicted by the Pickens County Grand Jury in February 2010 for failure to stop for a blue light (2008-GS-39-1338) and trafficking crack cocaine, greater than ten grams but less than twenty-eight grams, third offense (2008-GS-39-1339). Petitioner proceeded to a jury trial before the Honorable Larry R. Patterson, Circuit Court Judge, and was represented at trial by Robert L. Newton, Jr. On November 18, 2008, Petitioner was found guilty as charged. Judge

Patterson sentenced Petitioner to three years' imprisonment on the failure to stop charge and twenty-five years' imprisonment on the cocaine trafficking charge.[1]

### Underlying Case Facts

On December 3, 2007, at approximately 4:30 a.m., Easley Police Department Officers Jeremy Benjamin and Connor Shivers were on duty when they observed a passing vehicle with only one operational headlight (app. 19, 56, 59, 102). With Officer Shivers following behind in another police car, Officer Benjamin pursued the vehicle and activated his blue lights and siren with the intention of stopping the vehicle and issuing the driver a warning citation. Instead of stopping, the vehicle rapidly accelerated, and a chase ensued (app. 56-57, 60, 102-03).

The officers pursued the vehicle as it reached speeds between 100 and 120 miles per hour (app. 56, 61, 103). During the chase, the vehicle swerved into the grass several times, and the driver occasionally appeared to lose control (app. 56-57, 61). The chase went on for approximately 3.7 miles (app. 56). Suddenly, as the vehicle approached an intersection at a high rate of speed, the driver lost control, drove into a grassy area, and struck a rock wall (app. 62-63). The force of the impact lifted the back end of the car off the ground (app. 64).

The officers stopped their patrol cars in the roadway and approached the wrecked vehicle with guns drawn (app. 64, 104). Petitioner was in the driver's seat with his hands raised and appeared disoriented (app. 64). The officers yelled for Petitioner to exit

---

[1]Petitioner's prior convictions included the following: receiving stolen goods and conspiracy, 1984; accessory before the fact of a felony (strong armed robbery), burglary, and grand larceny, 1986; possession of marijuana, 1986; twelve counts of possession of drug paraphernalia starting in the 1980s; carrying a pistol,1994; possession of a Schedule 1 controlled substance (1st offense), receiving stolen goods, and possession of crack cocaine (1st offense), 1995; felon in possession of a pistol and manufacture or distribution of methamphetamine or crack cocaine, 1996; criminal domestic violence, selling counterfeit drugs, and possession of ice or crack cocaine, 1997; first-degree burglary, 2003; and possession of marijuana, 2007 (app. 178-79).

the vehicle, and Officer Shivers pulled him from the car (app. 64-65). Immediately after Petitioner was pulled from the vehicle, Officer Shivers realized there was also a passenger in the car (app. 104-05). The officers put Petitioner on the ground, hand-cuffed him, and placed him under arrest (app. 65-66). As soon as Petitioner was secured and within minutes of the crash, Officer Shivers went to check on the passenger (app. 105).

Officer Benjamin remained with Petitioner. He performed a pat-down search, and once Petitioner was secured, Officer Benjamin checked to make sure he was not injured (app.65, 66-67). Petitioner appeared disoriented at first, but he had no visible serious injuries (app. 67). Officer Benjamin then read Petitioner his Miranda rights verbatim from a card, and Petitioner nodded that he understood those rights (app. 67, 68-69). Petitioner then admitted to smoking crack cocaine 30-45 minutes before the chase (app. 70).

Based on Petitioner's statements, Officer Benjamin conducted a search of the vehicle (*id*.). The officer recovered four syringes, silver spoons with white handles, an empty orange medicine bottle, and a glass tube in the driver's side floorboard (app. 71, 72). The officer also located a glass tube, metal rod, and medicine dropper in the passenger's purse (app. 73). On the ground roughly a foot and a half from the car, on the driver's side, in the area of the hinge of the front driver's door and the front wheel well, Officer Benjamin discovered a medicine bottle similar to the one recovered from the interior of the car (app. 74-75). The ground was wet or damp due to previous rain, but the medicine bottle was dry (app. 99-100). Inside of this medicine bottle, there were two bags containing approximately 4.37 grams of crack cocaine and 10.90 grams of cocaine, respectively (app. 146). When questioned about the recovered items, Petitioner denied ownership (app. 76-77).

Meanwhile, Officer Shivers attended to the passenger (app. 105). The passenger initially gave a false name, but she was later identified as Jessica Kennedy, Petitioner's girlfriend at the time (app. 91-92, 112). Officer Shivers stayed with Kennedy

3

until EMS arrived and provided treatment (app. 105). He never saw Kennedy throw anything from the vehicle (app. 105-06). Kennedy was transported to a local hospital where she was arrested after the police recovered a glass pipe from her bra (app. 93, 95).

At trial, Kennedy testified to the events leading up to the chase and crash. In a car borrowed from Kennedy's friend, Petitioner drove Kennedy to a neighborhood where he could purchase drugs (app. 123). Kennedy waited in the car while Petitioner went inside a home to buy the drugs (*id*.). Petitioner and Kennedy then got high on crack while Petitioner was driving (app.123, 127, 132). Petitioner then attempted to elude the police and wrecked the car as described above. Kennedy denied moving anything in the car or throwing anything out of the car (app. 127, 128). Kennedy recognized the recovered medicine bottle containing the drugs because it was in the car at one point, but she denied ownership. She stated the bottle was "just in the car" (app. 135).

The officers' testimony corroborated some of Kennedy's testimony. While Kennedy was left unattended temporarily after the crash, she was never seen throwing anything from the car (app. 86, 106). Furthermore, Officer Benjamin testified it would have been difficult for the passenger to have thrown the bottle from the vehicle based on its condition and location right outside of the driver's side door (app. 99). Additionally, the officer indicated he did not initially detect the medicine bottle when he approached the car because the car door interfered with his ability to see the place where the bottle was eventually recovered (app. 98).

At the close of the State's case, Petitioner moved for a directed verdict on the trafficking charge (app. 148). Petitioner argued Kennedy lacked credibility, Kennedy was left unattended after the wreck, and no drugs were found on Petitioner's person (app. 148-49). The trial judge denied the motion (app. 149). Subsequently, the jury convicted Petitioner on all charges.

4

### Direct Appeal

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals. Petitioner was represented by Elizabeth Franklin-Best of the S.C. Office of Appellate Defense. In the direct appeal brief, Petitioner raised the following issue:

> 1. The trial court erred in denying [Petitioner's] motion for a directed verdict on the charge of trafficking in cocaine.

(Doc. 31-3 at 3). The State filed a responsive brief (doc. 31-4). The Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *State v. Boyd*, Op. No. 2011-UP-070 (S.C. Ct. App. Filed Feb. 23, 2011). In its opinion, the Court of Appeals found substantial circumstantial evidence showed:

> [Petitioner] knowingly possessed the requisite amount of cocaine. Specifically, the arresting officer testified he discovered a medicine bottle containing drugs in the grass next to the driver's side door. Labs [sic] tests determined the contents of the medicine bottle to be 10.90 grams of cocaine and 4.37 grams of crack cocaine. The only other passenger in the vehicle testified the medicine bottle was in the vehicle prior to the stop. She also said she did not throw it from the vehicle. This evidence, in addition to Boyd's flight, his admission of recent drug use, and the drug paraphernalia found on the driver's side of the vehicle, permits the jury to reasonably infer guilt.

(Doc. 31-5 at 2-3). Remittitur was issued on March 11, 2011.

### PCR

Petitioner filed an application for post-conviction relief ("PCR") on September 9, 2011 (2011-CP-39-1320). Respondent filed its return on January 20, 2012. An evidentiary hearing into the matter was convened at the Pickens County Courthouse on December 17, 2012, before the Honorable Edward W. Miller, Circuit Court Judge. Petitioner was present at the hearing and was represented by PCR counsel, H. Chase Harbin. Respondent was represented by Assistant Attorney General Karen C. Ratigan. At the hearing, Petitioner testified on his own behalf. Petitioner's trial counsel, Robert L.

5

Newton, also testified at the hearing. The PCR court had before it the Pickens County Clerk of Court's records regarding Petitioner's convictions, Petitioner's records from SCDC, the trial transcript, the appellate records, the PCR application, and the State's Return thereto. On January 17, 2013, the PCR court issued as order of dismissal, denying and dismissing the PCR application with prejudice (app. 296-304). The order was filed on January 24, 2013.

### PCR Appeal

On August 22, 2013, Petitioner appealed the denial of his PCR application by way of a *Johnson* petition for writ of certiorari to the South Carolina Supreme Court (doc. 31-7). Petitioner was represented in the appeal by Robert M. Pachak, Assistant Appellate Defender of the S.C. Office of Appellate Defense. In the *Johnson* petition, Petitioner raised the following issue:

> Whether trial counsel was ineffective in failing to subject the State's case to a meaningful adversarial testing?

(Doc. 31-7 at 2). Appellate counsel certified to the Supreme Court that the appeal was without merit and asked to be relieved as appellate counsel (doc. 31-7 at 7). Petitioner filed a *pro se* response to the *Johnson* petition raising the following issues:

> 1. Whether counsel was ineffective for asking witness about the pill bottle during his cross-examination of the witness? [summarized]
>
> 2. Whether constructive amendment of indictment divested trial court of subject matter jurisdiction and ineffective assistance for failure to object to indictment and court not charging jury on entire trafficking statute?
>
> 3. Whether PCR Court erred in not granting relief for trial counsel not requesting a curative instruction when trial court sustained objection to prosecutor's statement during closing argument?
>
> 4. Whether trial counsel conspired with the County of Pickens and the Solicitor to convict him?
>
> 5. Whether PCR counsel was ineffective in failing to submit a proposed Order of Dismissal?

6

6. Whether there was ineffective assistance of PCR counsel in failing to properly present ineffective assistance of appellate counsel and whether there was ineffective assistance of appellate counsel for failing to argue South Carolina law was unconstitutional?

7. Whether there was ineffective assistance of PCR counsel in failing to present issue of ineffective assistance of trial counsel for failing to object to character evidence & Pickens County denied Petitioner his constitutional rights by appointing the PCR counsel he received who was ineffective?

8. Whether there was ineffective assistance of PCR counsel for sabotaging Petitioner's claim of ineffective assistance of counsel regarding the chain of custody issue by not introducing documents re chain of custody?

9. Whether there was ineffective assistance of PCR counsel in presenting claim of ineffective assistance of trial counsel for failing to move for a curative instruction or mistrial during closing argument?

10. Whether there was ineffective assistance of PCR counsel in presenting claim of ineffective assistance of trial counsel for cross-examining Jessica Kennedy about the pill bottle?

11. Whether there was ineffective assistance of PCR counsel in failing to present *Brady* and prosecutorial misconduct claim against the prosecution?

12. Whether the trial court lacked subject matter jurisdiction when it did not charge the entire trafficking statute to the jury; whether trial counsel was ineffective for not objecting, and whether PCR counsel was ineffective for not presenting this issue?

13. Whether there was ineffective assistance of appellate counsel?

14. Whether appellant's conviction should be reversed where false evidence used by the State to convict appellant (co-defendant had a deal with State for immunity which was not disclosed)?

15. Whether appellant received ineffective assistance of appellate counsel for failure to file petition for rehearing or reinstatement to review overlooked facts?

16. Whether appellant's directed verdict motion should have been granted and trial court erred in questioning witness Jessica Kennedy about pill bottle?

17. Did the government violate my constitutional rights by appointing my attorneys who were ineffective including trial counsel and appellate counsel [who did not preserve my issues on direct appeal?

18. Whether trial counsel was ineffective for conceding his guilt to failure to stop for a blue light?

19. Whether trial counsel was ineffective for advising appellant not to testify at this trial?

20. Whether trial counsel was ineffective in cross-examining witness Jessica Kennedy about the pill bottle?

21. Whether the State violated *Brady*, Rule 5, and committed prosecutorial misconduct?

22. Whether trial counsel was ineffective for failing to request a curative instruction and/or a mistrial in response to the prosecutor's closing argument?

(Doc. 31-8 at 2-45).

On August 7, 2014, the South Carolina Supreme Court denied certiorari. Remittitur was issued on August 25, 2014 (doc. 31-10).

## **FEDERAL PETITION**

On November 13, 2014, Petitioner filed this Section 2254 petition (doc. 1). On April 17, 2015, Respondent filed a motion for summary judgment (doc. 30). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the motion (doc. 32). On August 17, 2015, Petitioner filed his response in opposition (doc. 49).

8

In his federal habeas petition, Petitioner makes the following claims:[2]

**Ground One:** The trial judge erred by denying Petitioner's directed verdict motion.

**Ground Two:** Ineffective assistance of counsel.

Issues 1 and 4: Trial counsel was ineffective in cross-examining Kennedy because he opened the door to the pill bottle evidence and failed to move to strike her answers about the ownership of the pill bottle.

Issue 2: The trial judge lacked subject matter jurisdiction because the trial judge amended the date of offense on the indictment at the beginning of trial.

Issue 3: Trial counsel was ineffective for failing to move for a curative instruction when the solicitor referred to Petitioner as a drug dealer in his closing statement.

Issue 5: PCR counsel was ineffective for failing to submit a proposed order to the PCR judge.

Issues 6 and 8: PCR counsel was ineffective for failing to advocate on Petitioner's behalf on Petitioner's claim that trial counsel was ineffective for failing to move for a curative instruction when the solicitor referred to Petitioner as a drug dealer in his closing argument.

Issues 7 and 10: PCR counsel sabotaged Petitioner's PCR proceeding by failing to raise his chain of custody and Brady violation issue to the PCR court.

Issue 9: PCR counsel sabotaged Petitioner's PCR proceeding by failing to raise Petitioner's claim that trial counsel was ineffective in his cross-examination of Kennedy.

**Ground Three:** The trial court lacked subject matter jurisdiction because it omitted elementary facts from its jury charge.

**Ground Four:** PCR counsel was ineffective for failing to raise Petitioner's claim that direct appeal counsel was ineffective for

---

[2]The grounds for relief listed here represent the Court's most accurate representation of Petitioner's organization of the claims in his petition. However, several arguments in support of these claims are raised within multiple grounds, and several grounds are duplicates of earlier grounds for relief.

> failing to file a petition for rehearing, which prevented Petitioner
> from exhausting his state remedies.

(Doc. 1 at 5-10; doc. 1-1, memo. in support).

## APPLICABLE LAW

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Habeas Corpus Standard of Review

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA, federal courts may not grant habeas corpus relief on any claim that was adjudicated on the merits in state court unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1), (2). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Exhaustion

Before seeking habeas corpus relief, Petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a

motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[3]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this Court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

improper character evidence); and *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

### Procedural Bar

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or an application for PCR and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v.*

*Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Supreme Court of the United States carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

14

## **ANALYSIS**

### *Ground One*

      In Ground One, Petitioner claims the trial judge erred by denying his directed verdict motion.  Respondent moves for summary judgment as to this ground, arguing the South Carolina Court of Appeals reasonably affirmed the trial judge's denial of Petitioner's directed verdict motion.

      Petitioner's claim that the trial judge erred in denying his directed verdict motion concerns whether the State presented any direct or circumstantial evidence reasonably tending to prove Petitioner's guilt.[4] *See State v. Harris*, 776 S.E.2d 365, 366 (S.C. 2015) (reciting the directed verdict standard for criminal cases in South Carolina). "Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing the plurality opinion in *Wright v. West*, 505 U.S. 277, 296 (1992)). On this issue, the Supreme Court has instructed:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (citations omitted) (emphasis in original).

      On appeal, Petitioner argued the trial judge erred by not granting his directed verdict motion (app. 186).  In an unpublished, *per curiam* opinion, the Court of Appeals

---

[4] South Carolina Code Annotated § 44-53-370(e)(2)(a)(3) (Supp. 2014), makes it unlawful to knowingly be in actual or constructive possession of cocaine or any mixture containing cocaine.

found substantial circumstantial evidence existed that Petitioner knowingly possessed the requisite amount of cocaine (app. 216).

The Court finds the Court of Appeals' opinion is a reasonable application of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2).[5] The evidence presented at trial was sufficient to allow a rationale trier of fact to find Petitioner was guilty of knowingly possessing crack cocaine. *See Jackson*, 443 U.S. at 318. Kennedy testified that on the day of their arrest, she and Petitioner drove to a nearby neighborhood to purchase crack (app. 123). She testified Petitioner alone purchased the crack while she waited in the car (*id*.). She further testified that before the police chase ensued, they smoked some of the crack in the car (app. 127). On cross-examination, Kennedy testified the pill bottle that contained the crack was on the floor of the car being driven by Petitioner (app. 138). She denied multiple times that the pill bottle belonged to her (app. 134-35, 138). Officer Benjamin testified that after Petitioner wrecked the car and was arrested, drug paraphanelia was found on the driver's side floor board. Outside of the car, he found the pill bottle laying on the ground roughly one and one half feet from the opened driver's side door, near the front tire (app. 89-90). The above testimony demonstrates the State presented evidence that Petitioner knowingly possessed crack cocaine on the day of his arrest. Accordingly, a rational trier of fact could have found Petitioner guilty of the elements of trafficking crack cocaine, and the Court of Appeals' finding that the trial judge did not err in refusing to direct a verdict in Petitioner's favor is reasonable.

---

[5] The Court notes that to the extent Petitioner seeks to argue the state courts erred in imputing possession of the pill bottle to Petitioner, that is a question of state law, s*ee State v. Hudson*, 284 S.E.2d 773, 774-75 (S.C. 1981), and this Court may not review a matter of state law in a federal habeas action. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").

**Ground Two, Issue 1**

In Ground Two, Issue 1, Petitioner claims trial counsel was ineffective in his cross-examination of Kennedy.   Specifically, Petitioner claims trial counsel's cross-examination resulted in Kennedy's testimony placing the pill bottle in the car, which was the fact relied upon by the trial judge in denying Petitioner's directed verdict motion. Respondent moves for summary judgment, arguing the PCR judge's finding that trial counsel was not ineffective in his cross-examination of Kennedy was reasonable.

To be entitled to relief on an ineffective assistance claim, a petitioner must show that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).   *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)).  There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case.  *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is

>whether there is any reasonable argument that counsel
>satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

At trial, the following colloquy occurred during trial counsel's cross-examination of Kennedy:

> [Trial counsel]: So it's your testimony that you never seen that bottle before today that I just showed it to you?
>
> [Kennedy]: Yeah.  I seen the bottle.
>
> [Trial counsel]: Where did you see it at?
>
> [Kennedy]: It was in the car at one point in time.
>
> [Trial counsel]: Where at in the car?
>
> [Kennedy]: I can't remember , sir.

(App. 135).  In denying Petitioner's directed verdict motion, the trial judge cited Kennedy's testimony that she knew the pill bottle was in the car as evidence to support the trafficking charge (app. 149).

At the PCR hearing, Petitioner testified he felt trial counsel was ineffective because he asked Kennedy about the pill bottle after the State did not mention the pill bottle on direct examination (app. 264).   Petitioner explained that Kennedy's testimony was damaging because it became the basis for the trial judge's finding that the State submitted sufficient evidence to withstand Petitioner's directed verdict motion (app. 264-65).  Trial counsel testified the pill bottle was in evidence prior to his cross-examination of Kennedy (app. 283).  Trial counsel stated that his question about the pill bottle did not harm the case, and further, that his entire approach at trial was to shift blame for the drugs to Kennedy and argue Petitioner was unaware of the drugs (app. 283-84).   The PCR judge found trial counsel was not deficient in his cross-examination of Kennedy because trial counsel's strategy was to show all of the contraband in the car belonged to Kennedy (app. 301).

18

The Court finds the PCR judge's finding is not contrary to, or an unreasonable application of, the *Strickland* standard. *See* § 2254(d)(1); *Harrington*, *supra*. Trial counsel's strategy of discrediting Kennedy and attempting to shift the blame to her is entitled to deference (app. 54). *See Harrington*, *supra*; *see also United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of *Strickland*, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"). As a witness, Kennedy was susceptible to impeachment by the defense. Kennedy was a drug user with a criminal record (app. 130, 135-36, 139-40). When she was arrested with Petitioner she originally gave a false name (app. 136-37, 139-40). She admitted to being high on crack cocaine at the time of her arrest, and she was found with drug paraphernalia on her person, unlike Petitioner (app. 123, 127, 133-34 ). At trial, she admitted she agreed to testify for the State in hopes of securing a plea deal on her own criminal charges (app. 129, 136, 139-40). Further, her testimony was riddled with gaps in her memory and inconsistent recollections of the facts (app. 125-26, 128, 134-35). Trial counsel cited these various issues with Kennedy's testimony in arguing she was not a credible witness during his argument in support of Petitioner's directed verdict motion (app. 148-49). Accordingly, trial counsel's strategy of attacking Kennedy's credibility and shifting the blame for the trafficking charges to her was reasonable in light of the various issues with Kennedy's credibility.

Additionally, the Court finds Petitioner failed to demonstrate he was prejudiced by trial counsel's performance. *See Strickland*, 466 U.S. at 694 (requiring that in order for a court to grant relief, the petitioner must show a reasonable probability the outcome of the proceeding would have been different, absent counsel's deficiency). The trial judge's denial of Petitioner's directed verdict motion would have still been appropriate, even absent Kennedy's testimony elicited during trial counsel's cross-examination. *See Harris*, 776 S.E.2d at 366 ("When reviewing the denial of a directed verdict, . . . . If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury.") Without

Kennedy's testimony linking the pill bottle to the car, the evidence presented by the State tended to show Petitioner smoked crack cocaine, fled police officers who initiated a traffic stop, and upon wrecking the car, was found to have drugs and drug paraphernalia in and around the wrecked car. Consequently, the State otherwise presented evidence tending to show Petitioner possessed crack cocaine. *See State v. Hudson*, 284 S.E.2d at 775-76 ("To prove constructive possession, the State must show a defendant had dominion and control, or the right to exercise dominion and control, over the [drugs]. Constructive possession can be established by circumstantial as well as direct evidence, and possession may be shared."); *see also State v. Beckham*, 513 S.E.2d 606, 612 (S.C. 1999) ("Evidence of flight has been held to constitute evidence of guilty knowledge and intent."). Accordingly, the evidence presented by the State before trial counsel's cross-examination of Kennedy was sufficient to withstand Petitioner's directed verdict motion; therefore, Petitioner cannot show the outcome of trial would have been different had trial counsel not cross-examined Kennedy about the pill bottle. *See Strickland*, *supra*. And further, the PCR judge's finding that trial counsel was not ineffective is a reasonable application of *Strickland*.

### Ground Two, Issue 2; Ground Three

In Ground Two, Issue 2, Petitioner claims the trial court lacked subject matter jurisdiction because the trial judge amended the date of the offense on the indictment at the beginning of trial. In Ground Three, Petitioner claims the trial court lacked subject matter jurisdiction because it omitted elementary facts from its jury charge. Respondent argues these claims are procedurally barred, and regardless, they are without merit. In response, Petitioner argues PCR counsel's ineffectiveness is cause to excuse the procedural bar as to these claims. *See Martinez*, *supra*.

Initially, the Court finds these claims are procedurally barred because they were not raised at trial or on direct appeal. *See Smith v. Murray*, 477 U.S. at 533; *see also Dunbar*, 587 S.E.2d at 693-94. Therefore, PCR counsel was not the cause of the procedural bar, and Petitioner's argument pursuant to *Martinez* is without merit.

20

To the extent Petitioner's argument can be construed to allege he can show cause to excuse the procedural bar and prejudice, *see Teleguz v. Pearson*, 689 F.3d at 327; the Court finds Petitioner has failed to state any facts showing there was an external factor from the defense that prevented Petitioner from raising the issue, that the factual or legal claim did not exist at the time, or that applying the procedural bar will result in a fundamental miscarriage of justice. *See Murray*, 477 U.S. at 488; *Roach*, 176 F.3d at 222; *McCarver*, 221 F.3d at 588.

Further, to the extent Petitioner seeks to claim trial counsel was ineffective for failing to move for dismissal of the indictments based on a lack of subject matter jurisdiction, and PCR counsel's ineffectiveness is cause to excuse the procedural bar to this claim (considering the claim was not raised to the PCR court), the Court finds Petitioner's underlying claims that the trial court lacked subject matter jurisdiction are patently without merit. Indictments are notice documents and do not affect the subject matter jurisdiction of South Carolina circuit courts. *See State v. Gentry*, 610 S.E.2d 494 (S.C. 2005) (clarifying that the concepts of subject matter jurisdiction and sufficiency of an indictment are distinct); *see also Bayly v. State*, 724 S.E.2d 182, 184 (S.C. 2012) ("Based on [*Gentry's*] clarification, we conclusively recognized that an indictment, which is a notice document, does not confer subject matter jurisdiction on a circuit court."). Therefore, even assuming defects in Petitioner's indictment, trial counsel had no basis to move to dismiss the case based on a lack of subject matter jurisdiction. Consequently, PCR counsel was not ineffective for failing to raise this meritless ineffective assistance of counsel claim at the PCR proceeding, and further, Petitioner cannot demonstrate that the outcome of the proceeding would have been different. *See Martinez*, 132 S. Ct. at 1318–19; *Trevino*, 133 S. Ct. at 1918. The Court finds Ground Two, Issue 2, and Ground Three are procedurally barred, and Petitioner failed to demonstrate cause to excuse the procedural bar.

### Ground Two, Issue 3

Petitioner argues trial counsel was ineffective because he failed to move for a curative instruction when the solicitor referred to Petitioner as a "drug dealer" and "drug

21

trafficker" during closing arguments. Respondent moves for summary judgment, arguing the PCR judge reasonably found Petitioner failed to meet his burden of proving trial counsel should have requested a curative instruction.

At trial, the solicitor twice referred to Petitioner as a drug dealer or drug trafficker, to which trial counsel objected:

> [Solicitor]: But these two were a team. They were partners in this business, the girl that testified, Ms. Kennedy and the Defendant. She had the scales. He had the drugs. He was the stronger of the two to protect them. She had the drugs. She was the drug dealer's girlfriend. Neither of them worked.
>
> [Trial Counsel]: Your Honor, I have to object, Judge. There was no basis that, no testimony that my client was any sort of a drug dealer or anything like that. There's no basis in the record to support that argument at all.
>
> [The Court]: I will sustain the objection.
>
> [Trial Counsel]: Thank you.
>
> [Solicitor]: She was the alleged drug trafficker's girlfriend. Did you notice when she testified, she was still under his spell? She kept looking at him. He kept evil eyeing her. I hope you saw that. It's a rather complicated situation.
>
> [Trial Counsel]: Judge, I have to object to that too. There's no –
>
> [The Court]: I will sustain the objection. You can only argue what's in evidence in the case and reasonable inferences from the evidence in the case.

(App. 165-66).

At the PCR hearing, Petitioner testified he felt trial counsel should have asked for a curative instruction following the solicitor's "drug dealer" and "drug trafficker" references (app. 263). The PCR judge found the trial judge's admonishment to the prosecutor was tantamount to a curative instruction to the jury, and trial counsel was not deficient in failing to formally request a curative instruction (app. 301). The PCR judge

22

further found Petitioner was not prejudiced because the State presented overwhelming evidence against Petitioner (*id*.).

The Court finds the PCR judge's finding is not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Strickland*, *supra*. First, the Court notes trial counsel objected to the solicitor's "drug dealer" and "drug trafficker" references, and those objections were sustained by the trial judge.[6] While mere objections to improper comments in closing arguments will not preserve the issue absent a motion to strike, a motion for a mistrial, or a request for a curative instruction, *see State v. Carlson*, 611 S.E.2d 283, 293 (S.C. Ct. App. 2005), trial counsel's objections highlighted the impropriety of the solicitor's references to the jury and prevented the solicitor from repeating the references. Also, Petitioner has failed to demonstrate that curative instructions would have changed the outcome of the trial. *See Strickland*, *supra*. The solicitor's reference to Petitioner as a "drug dealer" or "drug trafficker" was not prejudicial in light of the extensive testimony presented at trial showing Petitioner purchased drugs, used drugs, and traveled with drug paraphernalia (including pipes, scales, and syringes). *See State v. Huggins*, 481 S.E.2d 114, 116 (S.C. 1997) (providing where a solicitor does not confine his closing argument to evidence in the record, a new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process). Accordingly, the PCR judge's finding that Petitioner did not show prejudice is a reasonable application of the *Strickland* test.

### Ground Two, Issues 5 -10; Ground Four

In Ground Two, Issues 5 - 10, and Ground Four, Petitioner alleges in various forms that PCR counsel was ineffective because he sabotaged Petitioner's PCR proceeding by colluding with the State to protect trial counsel. Respondent moves for summary

---

[6] The Court notes trial counsel's second objection was more likely in response to the solicitor's reference to Petitioner staring at Kennedy during her testimony, rather than the solicitor's "drug trafficker" reference because referring to Petitioner as an "alleged drug trafficker" was not likely objectionable based on the evidence presented.

judgment, arguing these claims are not cognizable on federal habeas review. The Court agrees, and finds all of Petitioner's various claims that PCR counsel was ineffective are not cognizable in this action. *See* § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

### Ground Four (alternatively)

To the extent Petitioner's Ground Four can be construed to allege direct appeal counsel was ineffective for failing to raise the directed verdict issue, the Court finds this claim is without merit. On direct appeal, counsel raised the following issue: "The trial court erred in denying [Petitioner's] motion for a directed verdict on the charge of trafficking in cocaine" (app. 186). The Court first notes Petitioner's claim is procedurally barred because it was not raised at the PCR hearing. *See Smith v. Murray*, 477 U.S. at 533; *Plyler v. State*, 424 S.E.2d 477, 478 (1992) (stating issue not preserved for review where it was neither raised to nor ruled on by the PCR judge). However, Petitioner argues, pursuant to *Martinez*, that PCR counsel's ineffectiveness is cause to excuse the procedural bar. The Court finds Petitioner has not demonstrated cause to excuse the procedural bar because the underlying ineffective assistance of counsel claim is not substantial and is patently without merit. *See Martinez*, 132 S. Ct. at 1318–19; *Trevino*, 133 S. Ct. at 1918. Direct appeal counsel raised the directed verdict issue in Petitioner's brief to the Court of Appeals, as explained above. Therefore, PCR counsel had no basis to raise an ineffective assistance of counsel claim in regard to this issue at the PCR proceeding. Accordingly, the Court finds Petitioner failed to show cause to excuse the procedural bar.

24

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that Respondent's motion for summary judgment (doc. 30) be granted. The attention of the parties is directed to the notice on the next page.

s/Kevin F. McDonald
United States Magistrate Judge

November 13, 2015
Greenville, South Carolina

25

**Notice of Right to File Objections to Report and Recommendation**

     The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

     Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

     **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).